**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALY KOUROUMA**, | **CIVIL ACTION** |
| Petitioner, | |
| v. | **NO. 26-0182-KSM** |
| **JAMAL L. JAMISON**, *in his official capacity as Warden of the Philadelphia Detention Center*, et al., | |
| Respondents. | |

**MEMORANDUM**

January 15, 2026                                                                                    Marston, J.

This case is the most recent in a string of immigration cases challenging the Government's detention of a noncitizen without a bond hearing. Petitioner Aly Kourouma, a citizen of Guinea, entered the United States without inspection on May 25, 2023, and was quickly apprehended by U.S. Customs and Border Protection ("CBP"). (Doc. No. 1 at 2, 5.) The next day, he was released on an Order of Release on Recognizance and served with a Notice to Appear in Immigration Court, which charged him with having entered the United States without admission or inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at 2; Doc. No. 1-1 at 3, 5.) Afterward, Petitioner filed an I-589 Application for Asylum, which remains pending. (Doc. No. 1 at 2.)

On January 5, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") pursuant to a June 8, 2025 Department of Homeland Security ("DHS") policy instructing all ICE employees to consider anyone inadmissible under Section 1182(a)(6)(A)(i) subject to detention without eligibility for bond, regardless of whether they are

attempting to enter the country or have been present here for years.  (*Id.*)  Petitioner was detained

at the Federal Detention Center ("FDC") in Philadelphia, Pennsylvania, until he was moved to

Pike County Correctional Facility ("PCCF") in Lords Valley, Pennsylvania, on January 14,

2026.[1]  (*Id.*; Doc. No. 4 at 4.)

Just before his transfer, on January 12, 2026, Petitioner filed the instant Petition, in which

he argues that habeas relief is warranted because his continued detention is in violation of the

Immigration and Nationality Act ("INA"), the bond regulations promulgated pursuant to the

INA, and the Due Process Clause of the Fifth Amendment.  (Doc. No. 1 at 14–16.)  The

Government[2] opposes the Petition, arguing that the Court should deny habeas relief because:

(1) the Court lacks jurisdiction to intervene in Petitioner's removal proceedings, (2) Petitioner is

lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (3) his detention does not offend due

process.  (Doc. No. 4 at 6–17.)  For the reasons discussed below, these arguments fail.[3]  And this

Court joins the more than 90 courts in this District alone (*see id.* at 1–2) that have found DHS's

mandatory detention policy is unlawful in the context presented here.

---

[1] Petitioner's transfer to PCCF, which is located in the Middle District of Pennsylvania, does not strip this Court of jurisdiction to decide the instant habeas petition because when the Petition was filed, Petitioner was still being held at the FDC.  *See, e.g.*, *Khalil v. President*, No. 25-2162 (3d Cir. Jan. 15, 2026), Doc. No. 132 at 14 ("Our longstanding precedent likewise supports Khalil's position that the government's post-filing transfer of a habeas petitioner out of a district court's territorial jurisdiction does not deprive the district court of jurisdiction over the petition.").

[2] Petitioner names two government officials as respondents:  (1) Jamal L. Jamison, Warden of the FDC, and (2) Michael T. Rose, Acting Field Office Director of Enforcement and Removal Operations for ICE's Philadelphia Field Office (collectively, the "Government" or "Government Respondents").  (Doc. No. 1 at 1.)

[3] The Government concedes that the Court can decide the issues raised in the Petition on the papers and without a hearing.  (*See* Doc. No. 4 at 17 & n.4.)

## I.    JURISDICTION

To begin, the Court finds that we have jurisdiction to consider the merits of the Petition. As relevant here, 28 U.S.C. § 2241 authorizes federal district courts to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(c). And although the INA limits the Court's jurisdiction over certain immigration matters, none of the provisions identified by the Government—8 U.S.C. § 1252(a), (b)(9), and (g)—strip the Court of jurisdiction in this case. (*See* Doc. No. 4 at 6.)

*First*, Section 1252(a)[4] does not strip the Court of jurisdiction because Petitioner is not challenging a *discretionary* decision. *See, e.g.*, *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *4 (E.D. Pa. Nov. 14, 2025) ("The petition does not challenge a discretionary choice to detain Mr. Kashranov. Instead, there's a pure legal question about which section governs. If it's 1225(b), then detention is mandatory. No discretion. If it's 1226, then due process protections apply, and a bond hearing is mandatory. No discretion. Either way, the dispute is about the scope of the Government's statutory detention authority, which, as the Supreme Court has made clear, is 'not a matter of discretion.'" (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001))); *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) ("Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar jurisdiction because Petitioner is not challenging a discretionary decision to deny him bond, but is instead challenging the Government's position, as a matter of statutory interpretation, that no bond hearing is required.").

---

[4] Section 1252(a)(2)(B)(ii) states that "[n]otwithstanding any other provision of law . . . , including section 2241 of Title 28, or any other habeas corpus provision . . ., no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii).

**Second**, Section 1252(b)(9)[5] does not strip the Court of jurisdiction because the question before the Court—whether a bond hearing is required prior to detention—is "collateral to the removal process." *Cantu-Cortes*, 2025 WL 3171639, at *1; *see also, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (Alito, J.) (reasoning for a plurality of the Court that because the class was not challenging "an order of removal," a "decision to detain [the noncitizen] in the first place or to seek removal," or "the process by which [a noncitizen's] removability will be determined," Section 1252(b)(9) did "not present a jurisdictional bar" to the Court's consideration of whether Sections 1225 and 1226 require detention without a bond hearing); *E.O.H.C. v. Secretary, U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 185–86 (3d Cir. 2020) (citing the plurality's discussion in *Jennings* with approval and "distill[ing]" that discussion to "a simple principle"—Section 1252(b)(9) does "not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal"); *Khalil*, No. 25-2162, Doc. No. 132 at 31 (explaining that the plurality's "reading defines the proper scope of § 1252(b)(9)").

The Third Circuit's opinion in *Khalil*, which was released earlier today, does not change the Court's conclusion. In *Khalil*, the petitioner was a lawful permanent resident in the United States, and a vocal advocate of Palestinian human rights. Doc. No. 132, at 3. The Secretary of State determined that he was removable under an INA provision that allowed removal of a noncitizen whose "presence or activities in the United States . . . would have potentially serious adverse foreign policy consequences." *Id.* at 4. The petitioner was arrested and later served with

---

[5] Section 1252(b)(9) provides that "no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision" to review "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States," unless review is sought of a final order. 8 U.S.C. § 1252(b)(9).

a notice to appear, which charged him as removable under the foreign-policy provision and on the alternate ground that he "procured" his status as a lawful permanent resident "by fraud or by willfully misrepresenting a material fact." *Id.* at 5. The petitioner sought habeas relief in federal district court. *Id.* He argued that the government's actions were the product of an unlawful policy of targeting immigrants for pro-Palestinian speech, challenged the foreign policy provision as unconstitutionally vague, claimed the fraud charge against him was retaliatory, and asserted that his detention was impermissibly punitive. *Id.* at 6. The district court agreed and granted the petition. The Third Circuit vacated that ruling, holding that Section 1252(b)(9) stripped the district court of subject matter jurisdiction. *Id.* at 20. The appellate court distinguished its prior opinion in *E.O.H.C.*, finding that the petitioner's challenge to his ongoing detention was not "wholly collateral to the removal process," but instead "inextricably linked to it" and therefore, capable of consideration on a petition for review ("PFR") of a final order of removal. *Id.* at 23 (quotation marks omitted); *id.* at 26 (finding that "addressing any of [the petitioner's] claims would require deciding whether removing Khalil would be unlawful—the very issue decided through the PFR process").

Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not "inextricably linked" to his removal proceedings. Petitioner does not argue that his confinement is unlawful because the Government's removal action is itself invalid. *Cf. id.* at 28 ("Though Khalil also challenges his detention, his arguments against it are identical to his arguments against removal."). Nor does Petitioner challenge the Government's broader authority to detain him pending a final decision on removal. Instead, he challenges the Government's authority to detain him *without a bond hearing*. This question is not "the very issue decided through the PFR process," nor is it capable of review once the immigration courts issue a final order on removal.

5

*See id.* at 33 (distinguishing two cases that "challenged only the length of confinement without a bond hearing, a claim that does not get channeled into the PFR review process"); *cf. id.* at 28 ("Because the arguments Khalil has offered to challenge the detention necessarily challenge the government's decision to commence removal proceedings, the PFR court will be able to review those legal questions once the Board enters a final order of removal." (quotation marks omitted)).

   ***Third***, Section 1252(g)[6] does not strip the Court of jurisdiction because Petitioner is not challenging the Government's authority to *commence* or *adjudicate* his removal proceedings—proceedings which have been ongoing for years. *See Reno v. Am.-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471, 482 (1999) (narrowly reading Section 1252(g) and finding it "applies only to the three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'" and not to the "many other decisions or actions that may be part of the deportation process") (emphases in original); *see also, e.g.*, *Demirel*, 2025 WL 3218243, at *3 ("Demirel seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur).  The Government's contention that his claims 'arise from' the commencement of removal proceedings is thus incorrect." (internal citations omitted)); *Kashranov*, 2025 WL 3188399, at *3 ("Mr. Kashranov does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. Instead, he contests the Government's legal authority to detain him under Section 1225(b)(2). Section 1252(g) does not apply to such a claim and therefore does not strip the Court of

---

[6] Section 1252(g) states that "notwithstanding any other provision of law . . . ., including section 2241 of Title 28, or any other habeas corpus provision . . . , no court shall have jurisdiction to hear any clause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

jurisdiction to hear this case."); *Cantu-Cortes*, 2025 WL 3171639, at *1 ("8 U.S.C. § 1252(b)(9) does not bar this Court from reviewing whether a bond hearing is required prior to detention because that issue is collateral to the removal process. . . . 8 U.S.C. § 1252(g) also does not bar jurisdiction for similar reasons.").

In sum, the INA does not strip this Court of jurisdiction to decide the merits of the Petition.

## II.    MERITS

Turning to the parties' arguments on the merits, the Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1226(a),[7] not § 1225(b)(2),[8] and therefore, the Government's refusal to provide a bond hearing violates the INA and due process.[9]

---

[7] Section 1226 authorizes the detention of noncitizens "pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). But unlike a noncitizen detained under Section 1225, a noncitizen detained under Section 1226 may be released while they await a decision on removal. *Id.* (granting the Attorney General discretion to either detain the noncitizen *or* to release the noncitizen on bond or conditional parole). Immigration authorities are tasked with the "initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "At the hearing, the noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.'" *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019)). If released, the bond remains subject to revocation. *See* 8 U.S.C. § 1226(b) (providing that the Attorney General may "at any time revoke" the noncitizen's "bond or parole . . . , rearrest the alien under the original warrant, and detain" them).

[8] Section 1225 governs the inspection of "applicants for admission," a phrase broadly defined as any noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a)(1), (b)(1), (b)(2). Section 1225(b) divides applicants into two categories. *Id.* § 1225(b). First, Section 1225(b)(1) provides for the inspection of aliens "arriving in the United States and certain other aliens who have not been admitted or paroled." *Id.* § 1225(b)(1). And Section 1225(b)(2) governs the "[i]nspection of other aliens," stating that "[i]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending a removal proceeding. *Id.* § 1225(b)(2)(A).

[9] Because the Court agrees that Petitioner's detention violates the INA and his rights under the Due Process Clause of the Fifth Amendment, the Court need not consider whether it also violates the INA's implementing regulations.

7

When an applicant for admission is apprehended after being present in the United States for years, like Petitioner here, they are not "actively 'seeking admission'" at the time of their arrest, so Section 1225(b)(2) does not govern their detention. *Demirel*, 2025 WL 3218243, at *4; *see also, e.g.*, *Kashranov*, 2025 WL 3188399, at *6 (considering structure of Section 1225(b)(2) and the definition of "seeking" and concluding that "'seeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"); *Cantu-Cortes*, 2025 WL 3171639, at *2 ("A noncitizen like petitioner, who has already entered and is present in the country, simply cannot be characterized as seeking entry consistent with the ordinary meaning of that phrase." (quotation marks and citations omitted)). Instead, their detention is governed by Section 1226, which "grants the Attorney General discretion to detain or release a noncitizen on bond while removal proceedings are pending." *Kashranov*, 2025 WL 3188399, at *5. Courts have held that the right to a bond hearing is not merely statutory, but also constitutional. *Id.* ("When the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention and a bond hearing."); *see also, e.g.*, *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *1 (E.D. Pa. Nov. 19, 2025) ("[D]ue process and proper statutory interpretation of the INA preclude Ndiaye from being mandatorily detained without bond under § 1225(b)(2) . . . ."); *Cantu-Cortes*, 2025 WL 3171639, at *2 ("ICE's mandatory detention of Petitioner under 8 U.S.C. § 1225(b)(2)(A) violates the laws of the United States and Petitioner's rights under the Due Process Clause.").

Because ICE's mandatory detention of Petitioner without a bond hearing violates the INA and the Due Process Clause of the Fifth Amendment, habeas relief is warranted. 28 U.S.C. § 2241(c)(1), (3); *see also, e.g.*, *Kashranov*, 2025 WL 3188399, at *8.

**III.    CONCLUSION**

For the reasons discussed above, the Petition is granted.  The Court will order the release of Petitioner because he was unlawfully detained.  *See Kashranov*, 2025 WL 3188399, at *8; *Patel*, 2025 WL 3241212, at *3.  The Government is permanently enjoined from re-detaining Petitioner under § 1225(b)(2)(A).  The Government is also temporarily enjoined from re-arresting him under § 1226(a) for seven days following his release to ensure the habeas remedy is effective.  If, after seven days, the Government detains Petitioner under § 1226(a), the Government must provide him with notice and an opportunity to be heard at a bond hearing before an immigration judge, who will assess whether he poses a flight risk or a danger to the community.  An appropriate order follows.